# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2018 CA 1544

## JASON MEADOWS, INDIVIDUALLY AND JASON MEADOWS ON BEHALF OF SOUTHERN CROSS MARINE SERVICES, LLC

## VERSUS

## CHRISTY ADAMS

**Judgment Rendered:** AUG 0 7 2019

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2015-12840

Honorable Alan A. Zaunbrecher, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Jason R. Anders | Counsel for Plaintiff/Appellant |
| Sean McAllister | Jason Meadows |
| Mandeville, Louisiana | |
| | |
| David C. Spinner | Counsel for Defendant/Appellee |
| Galen M. Hair | Christy Adams |
| New Orleans, Louisiana | |

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., McCLENDON, AND HIGGINBOTHAM, JJ.

Higginbotham, J. dissents and assigns reasons.

**McCLENDON, J.**

In this appeal, plaintiff seeks this Court's reversal of a trial court judgment granting defendant's motion to enforce settlement agreement and dismissing plaintiff's claims with prejudice. Review of the record reveals that the appeal was not timely filed, therefore requiring dismissal.

## FACTS AND PROCEDURAL HISTORY

Christy Adams ("Adams") and Jason Meadows ("Meadows") were formerly married. A Petition for Divorce was filed on June 5, 2014. The divorce proceedings were captioned "Christy Adams, wife of Jason Meadows, versus Jason Meadows, Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana, Docket No. 2014-12593, Division H" ("divorce proceedings"). A Consent Judgment on Partition of Community Property ("Consent Judgment") was executed by both parties and signed by the trial court on August 29, 2014. Under the terms of the Consent Judgment, Meadows received one hundred percent (100%) right, title and interest in and to Southern Cross Marine, LLC. ("Southern Cross"), and agreed to assume full liability for holding Adams free and harmless from any responsibility for any and all debts associated with any property received by Meadows as a result of the community property partition.

On July 17, 2015, Meadows initiated the lawsuit from which this appeal arose ("the instant proceedings") by filing a Petition for Damages ("Petition"). The Petition alleged that Adams had been employed at Southern Cross during the parties' marriage, and in connection with that employment, she had failed to pay various creditors, dishonored contracts, incurred liability on behalf of the business, and wrongfully taken business funds for personal use. Adams answered the Petition, denying the allegations of wrongdoing. Litigation commenced.

On October 11, 2016, a hearing was held in the divorce proceedings on various pending motions filed by the parties. Following a conference with the trial court, the parties announced their intent to resolve the matters by stipulation, the terms of which were dictated into the record. On December 21, 2016, the trial court signed a Stipulated Judgment memorializing the terms agreed to at the October 11, 2016 hearing

2

("Stipulated Judgment"). The first two provisions of the Stipulated Judgment read as follows:

1. All open and/or pending contempt motions and sanctions motions filed by both parties are dismissed with prejudice, with each party to bear its own costs;

2. All outstanding issues in Judge Penzato's Division concerning pending matters between the parties are dismissed, with each party to bear its own costs.

On June 15, 2017, Adams filed a Motion to Dismiss with Prejudice ("Motion to Dismiss") in the instant proceedings. In the Motion to Dismiss, Adams relied on the Consent Judgment, the October 11, 2016 hearing, and the Stipulated Judgment, citing the provision in the Stipulated Judgment that "[a]ll outstanding issues in Judge Penzato[']s Division concerning [p]ending matters between the parties are dismissed." Meadows filed an Opposition to Motion to Dismiss with Prejudice. On July 3, 2017, the Clerk of Court notified the parties by letter that the Motion to Dismiss had been denied by Judge Fendlason, Pro Tempore, Division H.

On November 6, 2017, asserting that the claims set forth in the Petition were barred by the Consent Judgment, Adams filed Defendant's Peremptory Exception of No Cause of Action, No Right of Action, and Prescription, and Motion to Enforce Settlement, which Meadows opposed. Following a March 23, 2018 hearing, the trial court signed a judgment granting the Motion to Enforce Settlement and dismissing Meadows' claims with prejudice on May 8, 2018. Notice of Judgment was mailed May 9, 2018.

Meadows filed a Motion for New Trial by facsimile on May 17, 2018. The pleading transmitted to the Clerk of Court by facsimile was signed with counsel's electronic signature. Meadows delivered the Motion for New Trial to the Clerk of Court on May 24, 2018. However, the pleading delivered to the Clerk of Court was signed with counsel's handwritten signature, unlike the Motion for New Trial transmitted by facsimile bearing counsel's electronic signature. The trial court denied the Motion for New Trial without a hearing on May 29, 2018.

Meadows then filed a Petition for Devolutive Appeal by facsimile on July 13, 2018. As with the Motion for New Trial, the pleading transmitted to the Clerk of Court

3

by facsimile was signed with counsel's electronic signature, and the pleading delivered to the Clerk of Court on July 18, 2018, was signed with counsel's handwritten signature.

Adams filed a Motion to Dismiss Appeal and Request for Suspension of Briefing Delays with this Court on November 12, 2018. The Motion to Dismiss Appeal was referred to the merits of the appeal by an interim order dated December 7, 2018. Accordingly, we must first address this Motion in order to determine whether this Court has jurisdiction to hear the appeal.

## MOTION TO DISMISS APPEAL; TIMELINESS OF APPEAL

An appeal is taken by obtaining an order therefor, within the delay allowed, from the court which rendered the judgment. LSA-C.C.P. art. 2121. The appeal delays found in LSA-C.C.P. art. 2087 are not prescriptive periods that are subject to interruption; these time limits are jurisdictional. An appellant's failure to file a devolutive appeal timely is a jurisdictional defect, in that neither the court of appeal nor any other court has the jurisdictional power and authority to reverse, revise, or modify a final judgment after the time for filing a devolutive appeal has elapsed. **Everett v. Baton Rouge Student Housing, L.L.C.**, 2010-0856 (La.App. 1 Cir. 5/6/11), 64 So.3d 883, 886, writ denied, 2011-1169 (La. 9/16/11), 69 So.3d 1149. An application for new trial does not interrupt the delay for applying for a new trial or the delays for appealing unless the application is timely. *Id.*

In Adams' Motion to Dismiss Appeal, Adams argues that Meadows failed to comply with LSA-R.S. 13:850(B). Adams contends that Meadows failed to deliver to the Clerk of Court the original, identical Motion for New Trial; that Meadows also failed to deliver to the Clerk of Court an original, identical Petition for Devolutive Appeal; that these failures render the Motion for New Trial and Petition for Devolutive Appeal filed by facsimile ineffective; and, therefore, that these failures render the pleadings delivered to the Clerk of Court untimely. Meadows urges that he did comply with LSA-R.S. 13:850(B), arguing that this matter "simply involves a signature from the exact same attorney; everything else is identical."

Transmission of court filings by facsimile in civil actions is governed by LSA-R.S. 13:850, which provides in pertinent part:

4

A. Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court. No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

B. Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:

(1) The original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

(2) The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any.

(3) A transmission fee of five dollars.

C. If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

Under this statute, a party may file a pleading, with the same force and effect as a pleading physically filed at the courthouse or via mail, if each requirement of Subsection (B) is met. **Smith v. St. Charles Parish Public Schools**, 2017-0475 (La.App. 5 Cir. 5/1/18), 246 So.3d 821, 824, writ denied, 2018-1001 (La. 10/8/18), 253 So.3d 802. If a party does not deliver to the Clerk of Court an "original document identical" to the pleading filed by facsimile within seven days, only the purported original pleading delivered in person or by mail to the Clerk's office will have full legal force and effect. *Id.* at 825.

The determinative issue is whether Meadows complied with LSA-R.S. 13:850(B) when he filed pleadings by facsimile that had been executed with an electronic signature ("e-signed pleadings"), and delivered to the Clerk of Court pleadings that had been executed with a handwritten signature ("hand-signed pleadings"). The question before this Court is one of statutory interpretation, as the relevant facts are not in dispute.

Interpretation of any statute begins with the language of the statute itself. **David v. Our Lady of the Lake Hosp., Inc.**, 2002-2675 (La. 7/2/03), 849 So. 2d 38, 46. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. It is a recognized rule of statutory construction that the court must give the words of a law their generally prevailing meaning (except that words which are words of art or technical terms must be given their technical meaning). LSA-C.C. art. 11. Further, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10.

It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. **Lasyone v. Phares**, 2001-1785 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1071, writ denied, 2002-1711 (La. 10/14/02), 827 So.2d 423. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence or word becomes superfluous or meaningless. *Id.* Finally, if a statute is not clear on its face, the meaning must be determined. Statutory interpretation is the province of the judiciary. The paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. *Id.*

As previously noted, LSA-R.S. 13:850(B)(1) provides that "[t]he original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders" shall be delivered to the Clerk of Court. Louisiana Code of Civil Procedure Article 5053 provides "[w]ords and phrases are to be read in their context, and are to be construed according to the common and approved usage of the language employed. The word 'shall' is mandatory, and the word 'may' is permissive." Thus, LSA-R.S. 13:850(B)(1) mandates that the original document,

6

identical to the facsimile filing, be delivered to the Clerk of Court. Black's Law Dictionary, Third Edition, provides the following definition of "original":

> Primitive; first in order; bearing its own authority, and not deriving authority from an outside source; as original jurisdiction, original writ, etc. *As applied to documents, the original is the first copy or archetype; that from which another instrument is transcribed, copied, or imitated.*

[Emphasis added.]

In order to comply with the plain language of LSA-R.S. 13:850(B), Meadows was required to deliver the original pleadings to the Clerk of Court. However, the hand-signed pleadings that were delivered to the Clerk of Court were not the "first in order" or "first copy or archetype" of those pleadings. The "first in order" pleadings were those that were filed by facsimile bearing electronic signatures. The hand-signed pleadings that were delivered to the Clerk of Court had been amended by the removal of the electronic signature and addition of the handwritten signature; rather than being "that from which another instrument is transcribed, copied or imitated," the hand-signed pleadings were copied from the e-signed pleadings, and altered. Thus, the pleadings delivered to the Clerk of Court were not the original pleadings filed by facsimile. Meadows therefore did not satisfy the requirement set forth in LSA-R.S. 13:850(B) that the original pleadings be delivered to the Clerk of Court.

We acknowledge that LSA-C.C.P. art. 253 allows electronic filing of pleadings, documents, and exhibits. Paragraph A provides, in part, that all pleadings or documents to be filed in an action or proceeding instituted or pending in a court, and all exhibits introduced in evidence, shall be delivered to the Clerk of the Court for such purpose. Paragraph B provides:

> The filings as provided in Paragraph A of this Article and all other provisions of this Chapter, may be transmitted electronically in accordance with a system established by a clerk of court. When a clerk of court establishes such a system, he shall adopt and implement procedures for the electronic filing and storage of any pleading, document, or exhibit. The official record shall be the electronic record. A pleading or document filed electronically is deemed filed on the date and time stated on the confirmation of electronic filing sent from the clerk of court. Public access to electronically filed pleadings and documents shall be in accordance with the rules governing access to written filings.

Paragraph E provides that the Clerk of Court shall not refuse to accept for filing any pleading or other document signed by electronic signature, as defined by LSA-R.S.

9:2602, and executed in connection with court proceedings, solely on the ground that it was signed by electronic signature. Louisiana Revised Statute 9:2602 defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Louisiana Revised Statute 9:2607 provides that when a law requires a signature, an electronic signature satisfies the law.[1]

The statutes addressing the use of electronic signatures, LSA-R.S. 9:2602 and LSA-R.S. 9:2607, had been in effect for well over a decade at the time the statute addressing facsimile filing of pleadings, LSA-R.S. 13:850, was last amended in 2016. The legislature explicitly authorized the electronic transmission of pleadings and provided that the official record shall be the electronic record in LSA-C.C.P. art. 253(B), and precluded a Clerk of Court from refusing a pleading solely because it was signed by electronic signature in Louisiana Code of Civil Procedure Article 253(E). The legislature is presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, and with knowledge of the effect of their acts and a purpose in view. **Hunter v. Morton's Seafood Restaurant & Catering**, 2008-1667 (La. 3/17/09), 6 So.3d 152, 155. We find that when enacting LSA-R.S. 13:850(B), if the legislature intended that a document bearing an electronic signature be considered an "original" of a document bearing a hand-written signature in the context of LSA-R.S. 13:850(B), the legislature would have so provided.

---

[1] In his Supplemental Opposition to Adams' Motion to Dismiss Appeal, Meadows states that he signed each pleading he filed "either by way of an electronic signature pursuant to LSA-R.S. 9:2607 for fax-filing through an internet fax system, or physically, as required for submission to the district court." This appears to incorrectly conflate facsimile filing and electronic filing, which are authorized under different statutes as detailed above. As pointed out during oral argument, Meadows could have avoided this issue by printing the documents he intended to file, hand-signing those documents, scanning those documents, and delivering an image of those documents to the Clerk of Court by facsimile, whether the facsimile transmission took place through an internet fax system or a traditional fax machine. The hand-signed and identical original document could then have been physically delivered to the Clerk of Court in satisfaction of LSA-R.S. § 13:850(B).

We note that electronic filing and facsimile filing are also treated differently under the Local Rules of the Court of Appeal, First Circuit. Local Rule 8 permits electronic filing. Subsection F states that an "EFiled document shall be considered the original filing." Subsection G provides that all documents to be EFiled shall include an electronic signature. Local Rule 7, Subsection B, authorizes facsimile filing only in the case of an emergency writ. Subsection H provides that a signature produced by facsimile transmission will be treated as an original, and that "[a] party who files a signed document by facsimile represents that the original physically signed document is in his or her possession or control and can be made available for review as necessary for any subsequent challenge to authenticity."

This interpretation of LSA-R.S. 13:850(B) is further supported by **Smith v. St. Charles Parish Public Schools**, 246 So.3d 821. In **Smith**, the Fifth Circuit noted that jurisprudence interpreting LSA-R.S. 13:850 has historically demanded mandatory satisfaction of the requirements of Subsection (B), requiring litigants to comply with the literal meaning of the statute. **Smith**, 246 So.3d at 825, citing **Hunter v. Morton's Seafood Restaurant & Catering**, 6 So.3d 152, 156; **Turner v. Marine Inland Transp. Co.**, 2006-0342 (La.App. 5 Cir. 10/31/06), 946 So.2d 185, 187; **Antoine v. McDonald's Restaurant**, 98-1736 (La.App. 3 Cir. 5/5/99), 734 So.2d 1257, 1261.[2] With respect to the statute's current form, enacted in 2016, the Fifth Circuit wrote:

> ...[T]he plain language of the current statute is clear that a litigant seeking to fax-file must deliver to the clerk's office "the original document identical" to the faxed pleading. La. R.S. 13:850, as amended in 2016, clarifies that the legislature intends litigants to deliver the same exact document faxed to the court. The reference to the requirement that the document must be identical in "number of pages and in content of each page including any attachments, exhibits and orders" is illustrative of what defines an original document.

**Smith**, 246 So.3d at 826.

For all of the above reasons, we find that the language of LSA-R.S. 13:850 is not susceptible of more than one meaning, and rather mandates delivery of the exact document that was facsimile filed or the facsimile filing is without force and effect. The Motion for New Trial and Petition for Devolutive Appeal Meadows delivered to the Clerk of Court were not original documents identical to the documents that were filed by facsimile. Meadows failed to comply with all of the requirements of Subsection B of LSA-R.S. 13:850, such that Meadows' facsimile filings have no force or effect.

---

[2] As summarized in **Smith**:

> The Louisiana Legislature authorized filing pleadings via facsimile in 1991. *See* Acts 1991, No. 463. The legislature amended the statute in 1995, 2012 and 2016. *See* Acts 1995, No. 1119; Acts 2012, No. 826, eff. Aug. 1, 2012; Acts 2016, No. 109, eff. Aug. 1, 2016. The 1995 amendment required each Clerk of Court's office in the state to have the proper equipment to accommodate litigants filing documents via facsimile. Acts 1995, No. 1119. The amendment in 2012 changed the time limitation within which a party must deliver the original document to the Clerk of Court's office from five days to seven days. Acts 2012, No. 826. The amendment in 2016... changes the requirement that the original document be "forwarded" to the clerk's office within seven days to a requirement that the clerk's office receive the original document within seven days. Acts 2016, No. 109, eff. Aug. 1, 2016. The amendment also expands the statutory definition of "original signed document" in [LSA-]R.S. 13:850(B)(1) as quoted above.

**Smith**, 246 So. 3d at 824.

The trial court rendered judgment in favor of Adams and against Meadows on May 8, 2018. Louisiana Code of Civil Procedure Article 1974, governing the delay for applying for a new trial, provides:

> The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.

Louisiana Code of Civil Procedure Article 2087, governing the delay for taking a devolutive appeal, provides, in pertinent part:

> A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:
>
>> (1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.
>>
>> (2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

The record reveals that the Notice of Judgment was mailed on May 9, 2018. (R. 207) Therefore, the delay for applying for a new trial began on May 10, 2018, the day after the Clerk of Court mailed the judgment. See LSA-C.C.P. art. 1974. Seven days exclusive of legal holidays ran as of May 18, 2018. Though Meadows attempted to file his Motion for New Trial by facsimile on May 17, 2018, Meadows did not file an original document identical to the facsimile filing with the Clerk of Court within seven days of the May 17, 2018 filing, and therefore did not comply with Subsection B of LSA-R.S. 13:850. Pursuant to Subsection C of LSA-R.S. 13:850, if the filing party fails to comply with any of the requirements of Subsection B of LSA-R.S. 13:850(B), the facsimile filing shall have no force or effect, and only the purported original pleading delivered to the Clerk of Court, in this case, the hand-signed pleading, has full legal force and effect. See **Smith**, 246 So.3d at 825. Thus, the Motion for New Trial that was filed by facsimile on May 17, 2018, was ineffective, and the Motion for New Trial that was physically filed with the Clerk of Court on May 24, 2018, was untimely.

An untimely application for new trial does not interrupt the delay for applying for a new trial or the delays for appealing. **Everett**, 64 So.3d at 886. Thus, the sixty-day period within which Meadows was required to file an appeal began to run upon the

10

expiration of the delay for applying for a new trial on May 18, 2018, per Louisiana Code of Civil Procedure Article 2087. The time for filing a devolutive appeal in this case therefore expired July 17, 2018, which was the last day "within" sixty days after May 18, 2018. Meadows attempted to file his Petition for Devolutive Appeal by facsimile on July 13, 2018. Again, Meadows failed to file an original document identical to the facsimile filing with the Clerk of Court within seven days of the July 13, 2018 filing, and therefore did not comply with Subsection B of LSA-R.S. 13:850, rendering the pleading filed by facsimile on July 13, 2018, ineffective, and rendering the Petition for Devolutive Appeal that was physically filed with the Clerk of Court on July 18, 2018, untimely.

In this case, because of the lack of a timely motion for new trial, the delays for filing a motion and order of appeal were not interrupted, and the appeal was not timely filed. Therefore, we find that this court has no jurisdiction over the appeal of the May 8, 2018 judgment. See **Everett**, 64 So.3d at 886.

## CONCLUSION

For the above reasons, the appeal is dismissed. All costs of this appeal are assessed to Jason Meadows.

**APPEAL DISMISSED.**

11

JASON MEADOWS, INDIVIDUALLY AND JASON MEADOWS ON
BEHALF OF SOUTHERN CROSS MARINE SERVICES, LLC

VERSUS

CHRISTY ADAMS



**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**HIGGINBOTHAM, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully disagree with the decision of the majority to dismiss Mr. Meadows' appeal as untimely. Appeals are favored in the law, and an appeal should not be dismissed on a hyper-technical interpretation of the statute when a reasonable interpretation can be adopted which preserves the appeal. See **Shell Pipeline Corp. v. Kennedy**, 2000-3207 (La. 10/16/01), 799 So.2d 475, 478.

For a facsimile filing to have force or effect, La. R.S. 13:850 B requires that within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, the original document identical to the facsimile filing in number of pages and in content of each page must be filed. Louisiana Revised Statue 9:2607 provides that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form. Mr. Meadows' physically-filed motions as well as his facsimile-filed motions filed over an internet facsimile filing system were identical in the number of pages and the content of each page. Additionally the motions were signed by the same attorney, just in different forms. Therefore, I find Mr. Meadows' facsimile-filed motion for new trial and facsimile-filed motion for devolutive appeal complied with La. R.S. 13:850 B and should be given force and effect, making Mr. Meadows' motion for new trial and motion for devolutive appeal timely filed. For these reasons, I respectfully disagree with the majority's conclusion

1

that we do not have jurisdiction over Mr. Meadows' appeal of the May 8, 2018 judgment, and I would maintain the appeal and address the merits.